## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

WAHIID M. ALAMIIN, a/k/a )
JAMES SHOCKEY, )
                           )
           **Plaintiff,** )
                           )
vs. )      **Case No. CIV-06-871-F**
                           )
JEWEL BEASLEY, et al., )
                           )
           **Defendants.** )

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing pro se, brings this action pursuant to 42 U.S.C. § 1983 alleging a violation of his constitutional rights. United States District Judge Stephen P. Friot has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Both Plaintiff and Defendants have filed motions for summary judgment, and responses have been filed. Thus, the matters are at issue and ready for disposition. For the following reasons, it is recommended that the motion for summary judgment of Defendant Beasley be denied, and that the motion for summary judgment of Defendant Dishman be granted in part and denied in part. It is recommended that the motion for summary judgment of the Plaintiff be denied.

In his first amended complaint, Plaintiff names Officer Beasley, whom he identifies as a correctional officer at Great Plains Correctional Facility (Great Plains); and Kyle Dishman, identified as the warden's designee at Great Plains.[1] In a three-count complaint Plaintiff alleges first that Defendant Beasley denied him his religious rights under the First and Fourteenth Amendments, RLUIPA, 42 U.S.C. § 2000cc, the Oklahoma

---

[1]Plaintiff is currently housed at the Lawton Correctional Facility in Lawton, Oklahoma, but all of the events at issue here occurred while he was an inmate at Great Plains in Hinton, Oklahoma.

Constitution, Oklahoma Department of Corrections Policies and Procedures, and Great Plains Policies and Procedures, by subjecting him – a Muslim – to punishment for his refusal to accept a food tray containing an item forbidden by his religious beliefs.[2] First Amended Complaint, p. 3-4.   In the second count, Plaintiff alleges that Defendant Dishman similarly denied his rights by affirming a misconduct conviction resulting from the disciplinary action instigated by Defendant Beasley as a result of the incident regarding the food tray.   Id. at 5-6.   In the third count, Plaintiff does not name any Defendant, but provides additional information regarding Halaal/Haraam food labeling, and Great Plains' policy regarding the handling of situations in which inmates are unable to eat certain foods for dietary or religious reasons.   First Amended Complaint, p. 7.

## I. PROCEDURAL HISTORY

Defendants previously filed a motion to dismiss/motion for summary judgment [Doc. No. 31], and it was recommended that the motion, treated as a motion to dismiss,[3] be denied. [Doc. No. 45].   Defendants moved to dismiss on three grounds.   The undersigned recommended that Defendants' motion to dismiss for Plaintiff's failure to exhaust his administrative remedies be denied because Defendants relied upon overruled case law placing the burden of both pleading and proving exhaustion upon the Plaintiff.

---

[2]In his pleadings and administrative materials, Plaintiff occasionally uses the terms Haraam (forbidden) and Halaal (permissible) to describe food items. See Plaintiff's Response to Defendants' Motion, Ex. F, p. 3 (Glossary) [Doc. No. 44].

[3]The undersigned did not treat the motion as one under Fed.R.Civ.P. 56 due to Defendants' failure to comply with the procedural requirements for such motions in the United States District Court for the Western District of Oklahoma, in particular, Local Civil Rule 56.1(b).   Moreover, the substantive portion of Defendants' motion – particularly with regard to Proposition II – failed to provide any argument or authority showing the materiality of the facts discussed therein, or to specifically reference the various theories of recovery contained in the Amended Complaint.

<u>Freeman v. Watkins</u>,  479 F.3d 1257, 1259 (10th Cir. 2007) (In <u>Jones v. Bock</u>, 127 S.Ct. 910 (2007), the Court resolved circuit splits surrounding exhaustion issues and found that  failure to exhaust is an affirmative defense under the Prison Litigation Reform Act, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints). The undersigned also recommended denial of Defendants' motion to dismiss based upon their contention that the documentation attached to Plaintiff's Complaint showed that there are no pork ingredients served in any of the pudding or jello products at GPCF.  The undersigned noted that Plaintiff alleges in the Amended Complaint that it is his religious belief that he should refrain from eating foods containing certain items unless they are properly marked, and that he had an approved religious diet that specifically allowed him to forgo eating pudding and jello products – making the lack of pork or pork by-products in those  food items irrelevant to his claims, at least on their face. Finally, the undersigned recommended that dismissal based upon Defendant Dishman's lack of personal participation be denied, noting that Plaintiff alleged that Defendant Dishman violated his rights by affirming a misconduct against him even though he was aware of a memo approving Plaintiff's religious diet, and that he did so arbitrarily, maliciously, and with deliberate indifference.

Because the undersigned treated the Defendants' alternative motion to dismiss/motion for summary judgment as one to dismiss, it was determined that disposition of Plaintiff's cross-motion for summary judgment [Doc. No. 35] should be deferred.

After consideration of Defendants' objections to the Report and Recommendation, Judge Friot entered an Order adopting it in its entirety, and re-referring the matter for further proceedings. [Doc. No. 49].    Defendants then filed a motion for summary judgment.  Accordingly, both motions for summary judgment are now at issue.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. Calhoun v. Gaines, 982 F.2d 1470, 1472 (10th Cir. 1992); Manders v. Oklahoma, 875 F.2d 263, 264 (10th Cir. 1989).  A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  "Material facts" are "facts that might affect the outcome of the suit under the governing law."  Id.

To obtain summary judgment, the moving party need not affirmatively negate the nonmovant's claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Rather, the moving party initially bears the burden only of " 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case."  Id., at 325.  Once the moving party has satisfied this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. Id. at 324. The nonmoving party "may not rest upon mere allegation" in his pleading to satisfy this

requirement  <u>Anderson</u>, 477 U.S. at 256.   Rather,  Fed. R. Civ. P. 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  <u>Celotex</u>, 477 U.S. at 324.

## III. UNDISPUTED FACTS

Based upon the special report, the first amended complaint,[4] and the evidentiary material appended to the various motions and responses filed herein, the following material facts are uncontroverted, deemed admitted, or, where disputed, viewed in the light most favorable to Plaintiff.  Immaterial facts and facts not properly supported by the record are omitted.

At all times pertinent to the issues raised herein, Plaintiff was housed at Great Plains Correctional Facility, Hinton, Oklahoma.  Amended Complaint, p. 1-2.  At the time of the incidents in question, Defendants Beasley and Dishman were employed at Great Plains, a facility owned by Cornell Companies, Inc., which was under contract to house Oklahoma inmates under the laws of the State of Oklahoma. Amended Complaint, p. 1-2, ¶ 2-3; Special Report, p. 4.[5]  Plaintiff has been a practicing Muslim since 1996, and has been a state prisoner of the Oklahoma Department of Corrections since 1991.  Amended

---

[4]The Amended Complaint contains a declaration under penalty of perjury that the information contained in it is true and correct.  Amended Complaint, p. 10.  Plaintiff's motion for summary judgment, as well as his response to Defendants' motion for summary judgment also contain declarations that the statements made therein are made under penalty of perjury. [Doc. No. 35, p. 6]; [Doc. No. 61, p.11].

[5]The pages of the Special Report are not numbered. The pages of Defendants' Response to Plaintiff's motion for summary judgment are not numbered either.  In fact, the undersigned has noticed that it is often the practice of the law firm representing Defendants herein to fail to number the pages of its filings with the Court, making it necessary for all those consulting them at every level to manually count them. Although there is no rule requiring page numbers, common sense and courtesy certainly do.

Complaint, p. 2;  Special Report, Ex. 3.  Since Plaintiff's arrival at Great Plains, he has requested each religious coordinator who has served in that position to approve a diet in conformance with his religion, specifically, one that would be Halaal, and free of pork and pork by-products.  Amended Complaint, p. 2.  On May 28, 2003, Plaintiff submitted a request to staff to Kent Wood, religious coordinator/chaplain at Great Plains, requesting

> a religiously required meal that is simple and will not hinder the food serve staff.  That I be provided with a pork and pork by product free diet, *jello - - pudding style product* free diet.  On the days that the ... items are serve I am requesting not to be served this items, or to have them replaced [just leave that space open], for I cannot eat these items, and they take up space for something I can eat [like salad].

Request to Staff, May 28, 2003 (attached to Amended Complaint) (emphasis added).  The action requested was "to have the above requested approved as religious diet."  Id.  Mr. Wood responded on June 17, 2003, noting in the disposition section "Done."  Id.

On September 29, 2005, Defendant Beasley directed Plaintiff to take a tray with a pudding product on it and he refused, telling her that he was approved for a religious diet.  Amended Complaint, p. 2-3;  Special Report, Ex. 6, 7. Defendant Beasley removed Plaintiff from the dining hall, where he continued to tell her and another correctional officer he identifies as Mitchell that he was approved for a religious diet.  Amended Complaint, p. 3.  As Plaintiff describes it, he was then taken by correctional officer Mitchell at the instruction of Defendant Beasley to "the cage" or "initial lock-up" for his action of refusing to take the non-approved tray.  Amended Complaint, p. 3. Defendant Beasley filed a misconduct report charging him with disobedience to orders as a result of the incident.  Amended Complaint, p. 3; Special Report, Ex. 1.  Previously, on October 1, 2004, Plaintiff had filed a grievance in which he alleged that Defendant Beasley refused

6

to serve him a correctly approved tray, forcing him to choose between his religious belief

and eating. Plaintiff's Response to Defendants' Motion to Dismiss, Ex. N-2 [Doc. No. 44].[6]

Plaintiff was found guilty of the misconduct offense on October 7, 2005, and

received 20 days of disciplinary segregation, loss of 120 days earned credits, a demotion

from classification level three to classification one for 60 days, and a $10 fine.[7]  Special

Report, Ex. 8.  The evidence relied upon was described as follows:

> Request to staff appears to be outdated.  Lt. Beasley states [Plaintiff] refused
> her order and became argumentative.  Lt. Beasley has nothing to gain or
> profit by lying.  As stated before, request to staff to Chaplain Wood appears
> to be outdated as it is over 2 years old.  If pudding makes [Plaintiff] sick, it
> is more a medical issue than a religious issue.

Id.  Plaintiff appealed on numerous grounds.  Among other things, he alleged that he

offered the only documentary evidence at the hearing, which  was the Request to Staff

approving a religious diet, that the applicable policies and procedures provide that the

religious coordinator is the one to approve special diets on religious grounds, that

applicable policies and procedures provide that an inmate unable to eat one food item

on religious grounds will be offered a double portion of another item, that there is no

policy or procedure requiring all food items to be placed on all trays, and that the

misconduct was an "an attack against me on religious issues."  Offender's Misconduct

Appeal Form, Special Report, Ex. 9, p. 2. On December 6, 2005, Defendant Dishman

conducted a "due process review" and upheld the conviction.  Special Report, Ex. 10.

---

[6]Plaintiff references some administrative materials attached to his response to Defendants' initial
motion to dismiss, and the undersigned has cited to them as they are for some reason not included in the
special report.

[7]Plaintiff also alleges that he lost his monthly "gang pay," which was apparently a consequence of
his reduction in classification level.  See Amended Complaint, p. 5.

Among his findings was that the "memo from Chaplain Wood did not give [Plaintiff] the right to refuse the direct order." Id. Plaintiff then appealed to the Director of the Oklahoma Department of Corrections (DOC). On December 27, 2005, Director's Designee Debbie L. Morton ordered a rehearing, finding that due process had not been provided. Special Report, Ex. 11. In the rehearing order Ms. Morton stated:

> [Plaintiff] is approved for a pork free diet. [Plaintiff] did attempt to provide relevant documentation. Specifically the "Request to Staff" that the pork free diet was approved by the chaplain, dated 6/17/2003. The investigator will ensure that a determination or verification is made as to whether or not [Plaintiff] is still approved for the pork free diet. *If it is determined that the inmate is still on the pork free diet and attempted to advise the reporting officer, consideration should be given to information obtained* by the investigator as to whether or not the inmate is approved for a pork free diet.

Special Report, Ex. 11 (emphasis added). Prior to the rehearing, Plaintiff sent another request to staff on January 1, 2006, to Chaplain Wood requesting him to verify that "my approved 'request to staff' 6/17/03, requested religious diet is still approved." Request to Staff, January 1, 2006 (attached to Amended Complaint). On January 4, 2006, Chaplain Wood again responded in the affirmative; however, this time he added his own description of the religious diet that was more limited than that Plaintiff had originally requested and for which he was approved at the time of the incident underlying his claims herein: "Yes, on '*non-pork*' diet." Id. (emphasis added). When the rehearing was conducted on January 24, 2006, the misconduct was "dismissed due to lack of evidence." Special Report, Ex. 13.

On March 6, 2006, Plaintiff sent a request to staff to his case manager, Mrs. Mooter, requesting

> that my Level III reinstatement be back dated until 9-27-2005.  This way I can receive my earn credits for that month and following months worked that I would have earned. Plus any and all gang pay for those months worked: (Sept. Nov. Dec. Jan.) I would have earned these naturally so I believe I should still have a right in good faith to them now.

Plaintiff's Response to Defendants' Motion, Ex. Q-3 [Doc. No. 44].   The action he requested also included refund of the $10.00 fine.  Id.  The disposition was "You have received $10.00 back and L-3 as of 2-14-2006," and was dated March 22, 2006.  On March 29, 2006, Plaintiff filed this grievance:

> I have asked in good faith to have my past level III reinstated back to 9-27-05, being the write-up I received was dismissed and expunged from my jacket as if it never happen.  The write-up was an attack on myself because of my religious beliefs. I also have asked for the missing back gang-pay and earn credits.  I am still be punished for my faith.  My First Amendment rights have been violated and due process.
>
> ...
>
> This the facility acknowledge a violation and set out to make it right. But have failed to finish the task.  Because of being denied earned credits and monthly gang-pays from Sept. 2005 until now had my rights not be violated, I still feel and believe that I am still being punish in violation of my First Amendment and other due process rights.  I am asking in good faith the return of all earn credits and gang pays. Not to receive any other type of punishment or retaliation for this and to have my rights safe guarded from future violations.
>
> Also I tried to resolve this issue by informal means and waited to file the first requested staff per my case manager Mrs. M. Mooter.  The first one to Mrs. Haub on 2-15-2006 to get fine $10.00 back and one to Mrs. R. Smith on 2-23-06 to get gang pay of back months back.  Then the one to Mrs. M. Mooter asking for $10.00 fine back, gang pay, and back earn credits. GPCF/CCI is refusing to address this issue.

Plaintiff's Response to Defendants' Motion, Ex. Q-1.  On April 1, 2006, the grievance was returned unanswered as "out of time from date of incident."  Id. at Ex. Q-2.  Plaintiff appealed, and the appeal was returned by Director's Designee Debbie L. Morton, stating

"out of time from date of request to staff response - previous RTS filed <u>2/15/06</u> and <u>2/23/06</u>" and also "more than 1 issue - only 1 issue allowed per grievance see below #21." Number 21 on the form states "① denied gang pay and earned credits since [misconduct] was dismissed; ② 1st Amendment rights violated by punishment w/ food, "pre-write segregation," staff attempting to get you to talk against your faith. See OP-090124 Section XII." <u>Id.</u> at Ex. Q-4.  The provision allowing re-submission of a corrected grievance was lined out.  <u>Id.</u>

On September 16, 2006, Plaintiff filed yet another request to staff with assistant warden Travis Smith alleging that he had again been denied a religious-approved tray by Defendant Beasley.  <u>Id.</u> at Ex. U-2.  The request to staff was returned unanswered on grounds that the matter was in litigation.[8]  <u>Id.</u> at Ex. U-3.  Plaintiff then filed a grievance on October 2, 2006, <u>Id.</u> at U-1, and on November 16, 2006, Plaintiff received a letter from Director's Designee Debbie Morton stating that his grievance was being returned to Warden Calbone for further review and investigation.  Plaintiff's Response to Defendants' Motion, Ex. S.  Plaintiff wrote to the warden of GPCF on March 30, 2007, stating "This grievance was returned to you 11-16-2006, for further review and investigation and then an amended response was to be mailed back along with the original grievance within 15 days.  I have mailed you other letters trying to get an answer. I am sending this one certified and copied.  Please send grievance and amended response with the next 5 days." <u>Id.</u> at Ex. V.  Plaintiff attaches a copy of a return receipt indicating a date of delivery of April 3, 2007.  <u>Id.</u> at Ex. W.

---

[8]This action was filed on August 16, 2006.

The Special Report states that:

> There are no grievances on record at the facility that name Officer Beasley or Grievance Coordinator Dishman as parties. There are no records of informal requests for relief or formal requests to staff as required by Oklahoma Department of Corrections Policy OP-090124. A copy of that policy is attached to this Report as Exhibit 15. The inmate did not supply a copy of any alleged request to staff or subsequent appeal in support of his Complaint.

Special Report, p. 8. Included in the Special Report is the verification of Travis Smith, Assistant Warden at Great Plains, signed on March 15, 2007, in which he states that the statements in the Special Report "are true and correct to the best of my knowledge and belief."[9] Under the applicable grievance procedure, "the reviewing authority will assign a grievance number, category code, and stamp or show date of receipt on each and every page received, including the envelope" including "grievances returned unanswered for any reason." Special Report, Ex. 15 (OP-090124(VI)(A)(1)). It is not clear why the requests to staff and grievances discussed above were not included in the Special Report. However, Defendants did attach copies of some of these documents to their motion for summary judgment.

The month that Plaintiff was placed in disciplinary segregation was during Ramadan, and he claims that he only had one sandwich a day during this time because his breakfast tray was brought too late. Plaintiff's Motion for Summary Judgment, ¶ 4; Plaintiff's Response to Defendants' Motion for Summary Judgment, p. 2.

---

[9]The verification appears on the next to the last page before the exhibits.

## III.  DISCUSSION

### A. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on three grounds.  First, they contend that even if the pudding product in question contained pork, and Plaintiff was compelled to take it, such does not rise to the level of a constitutional violation.  Defendants' Motion, p. 3-4.   Second, Defendant Dishman contends that he had no personal involvement in the incident which forms the basis of Plaintiff's suit – other than upholding his disciplinary conviction – and that unless Defendant Dishman's action amounts to an abuse of power "that shocks the contemporary conscience," that involvement cannot give rise to liability for a constitutional violation.  Id. at 7.  Third, Defendants contend that Plaintiff has failed to exhaust his administrative remedies regarding restoration of his earned credits and regarding his complaints against Defendant Dishman.  Id. at 11.

### 1.  Denial of Religious Rights

First, Defendants move for summary judgment claiming that even if the pudding product in question contained pork, and Plaintiff was compelled to take it, such does not rise to the level of a constitutional violation.  Defendants' Motion, p. 3-4.  They contend that an isolated occurrence of being given meals containing forbidden food does necessarily mean that the prison's policies are not conducive to religious freedom, and that Plaintiff was given an order to accept his food tray, but instead of obeying the order, he chose to create a disturbance in the dining area, "an area that is inherently dangerous in the facility due to the concentration of inmates."  Defendants' Motion for Summary

12

Judgment, p. 5.  They claim Plaintiff could have accepted his tray and clarified the matter at a later time rather than create a security risk, and that the order to take his tray and proceed was thus not a constitutional violation.

In response, Plaintiff states that pursuant to GPCF policy, he requested and was granted a "pork and pork by-product free diet, jello – pudding style product free diet." Plaintiff's Response to Defendants' Motion, p. 4; Request to Staff, May 28, 2003 (attached to Amended Complaint).  He further claims that Defendant Beasley filed a false misconduct report to punish him for his religious beliefs, and in retaliation due to the previous grievance Plaintiff filed against her on the same issue.  Id.; see Ex. N-2, Plaintiff's Response to Defendants' Motion to Dismiss [Doc. No. 44].

At the outset, the undersigned notes that Plaintiff is bringing his religious freedom claim as one under both the First Amendment and RLUIPA, the latter of which Defendants have not addressed.[10]

### a.  Free Exercise Clause of the First Amendment

Defendants have centered their argument against Plaintiff's First Amendment claim to the proposition "that his right to practice his religion due to being denied one meal does not rise to the level of a Constitutional violation."  Defendants' Motion for Summary Judgment, p. 5.  In support, they cite an unpublished Tenth Circuit decision[11] in which a Muslim inmate confined in the Tulsa County Jail brought a civil rights action

---

[10]Defendants do not move for summary judgment on Plaintiff's claim that their actions violated his rights under the  Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C.A. § 2000cc-1 or that they acted in retaliation for his exercise of his First Amendment rights.

[11]The case is incorrectly cited in Defendants' brief as being found at 986 F.2d 1481, when in fact it is found in a table cite at 986 F.2d 1431.

under the First, Eighth and Fourteenth Amendment after he was mistakenly served green beans with bacon one day:

> The prison staff was aware of Plaintiff's religion; therefore a "bland diet" prescription for the Plaintiff was posted in the kitchen. It is uncontroverted that Defendant Warren served Plaintiff a meal containing green beans and bacon and that the Plaintiff complained to Mr. Warren about the bacon. However, the parties differ as to the subsequent remedial action taken by Mr. Warren. Mr. Warren contends that he immediately solved the problem by obtaining a pork-free meal tray for the Plaintiff and that the Plaintiff did not consume any bacon. On the other hand, the Plaintiff asserts that Mr. Warren returned with another tray containing green beans with bacon and that he inadvertently ate some of the bacon. The Plaintiff further contends that only after complaining again about the bacon was a pork-free meal finally delivered to him.

White v. Glantz, No. 92-5169, 1993 WL 53098 (10th Cir. Feb. 25, 1993).[12] The Tenth Circuit found that a factual dispute as to the number of times it took to solve the problem regarding the meal tray was not material and that the defendants in that case were entitled to summary judgment:

> There are several cases in other circuits in which the courts have acknowledged that a prison *policy* of either actually or constructively denying a pork-free diet to Muslim inmates potentially violates the inmates' First Amendment rights. We emphasize "policy" because the Plaintiff in the case before us only asserts that this isolated occurrence of being given two meals with green beans and bacon amounted to a deprivation of his Constitutional rights. In fact, the Plaintiff admits that if the first replacement meal tray was pork-free there would not have been any problem. Furthermore, the Plaintiff cites no authority, and we can find none, holding that a single instance of being fed pork violated a Muslim inmate's First Amendment right to freedom of religion. Similarly, we have located no cases in which a Muslim inmate's Eighth and Fourteenth Amendment rights were violated by being given a meal partially containing pork.

---

[12]This and any other unpublished decision is cited in accordance with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

> While we recognize that a Muslim inmate has a right to a nutritional non-pork diet, the record is clear that the prison's policies are conducive to the Plaintiff's religious freedom <u>and that the Defendants did not deliberately deviate therefrom</u>.

<u>Id.</u> at *1-2 (underlined emphasis added).  Defendants cite to two additional cases: an unpublished decision from the Eighth Circuit Court of Appeals, and a case from the Fifth Circuit Court of Appeals.  <u>Roddy v. Corbitt Nesbitt</u>, No. 99-4124, 2000 WL 1694061 (8th Cir. Nov. 14, 2000) ("allegations-that defendant prison officials denied him meals on three occasions over the course of a year-do not rise to the level of an Eighth Amendment violation"); <u>Berry v. Brady</u>, 192 F.3d 504, 506-08 (5th Cir. 1999) (refusing to allow inmate into dining hall on eight occasions over a seven-month period for his refusal to shave as required not an Eighth Amendment violation).  However, neither of these cases dealt with the First Amendment's exercise of freedom of religion, but instead, with whether depriving an inmate of meals in general was a violation of the Eighth Amendment.

"The Free Exercise Clause mandates that prison authorities afford prisoners reasonable opportunities to exercise their sincerely held religious beliefs." <u>Hammons v. Saffle</u>, 348 F.3d 1250, 1254 (10th Cir. 2003) (citing <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987)).  The Tenth Circuit specifically recognizes that "prisoners have a constitutional right to a diet conforming to their religious beliefs." <u>Beerheide v. Suthers</u>, 286 F.3d 1179, 1185 (10th Cir. 2002) (citations omitted); <u>see also</u> <u>Turner v. Safley</u>, 482 U.S. 78, 84 (1987) ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution.").  <u>Turner</u> does, however, mandate a deferential approach to prison regulations which impinge on inmates' constitutional rights.  "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is

15

reasonably related to legitimate penological interests." Id. at 89.  In Beerheide, the Tenth Circuit rejected the argument of the defendant prison officials that the Jewish plaintiffs could purchase kosher meals in the prison canteen as an alternative to eating the common fare provided to all prisoners because "[p]urchasing meals in the canteen is financially impossible for prisoners of limited means." Beerheide, 286 F.3d at 1187. Beerheide also rejected the defendants' practice of requiring Jewish prisoners to make a co-payment to offset the increased cost of preparing kosher meals, given the typical low pay received by prisoners for performing their prison jobs.  "Forcing prisoners to decide between communicating with family and legal representatives, seeking medical treatment, and following religious tenets constitutes a Hobson's choice rather than a true alternative." Id. at 1189.

Here, Plaintiff states that he is a Muslim, and has been since 1996.  Amended Complaint at 2.  The size and obscurity of the Islamic religion does not appear to be a factor that would affect the sincerity analysis, and Plaintiff has attached several documents explaining the dietary laws of the Islamic religion to his Amended Complaint and Response to Defendants' Motion.  Indeed, it does not appear that this point is contested, and Defendants have specifically requested the Court to assume arguendo that the pudding in question contained pork products.  See Defendants' Motion for Summary Judgment, p. 4.  Thus, the only issue from Defendants' standpoint is whether the isolated nature of any violation of his approved religious diet is actionable under the Free Exercise Clause.

16

The undersigned finds that Plaintiff has offered evidence sufficient to withstand the summary judgment motion.  The solitary unpublished First Amendment Free Exercise Clause case relied upon by Defendants is distinguishable because Plaintiff has offered evidence that his approved religious diet was deliberately denied in this case. This dispute is the result of three facts:  the earlier grievance against Defendant Beasley – the same individual who he alleges insisted that he take the pudding product in this instance – complaining about her forcing him to accept foods on his tray which he been allowed to forego; her decision to file a misconduct offense against Plaintiff after he refused to take the item even though he had informed her that he was under an approved religious diet that allowed him to forego it; and, the questioning by the facility of whether Plaintiff was still "approved" for his diet despite the fact that there was nothing to indicate that his approval was no longer valid and although the approval was obtained in accordance with facility policy (evidenced by the fact that the misconduct offense conviction was returned to the facility by the administrative review authority for consideration of that same approval).

Defendants claim that Plaintiff was given an order to accept his food tray and proceed, and that rather than obeying that order Plaintiff chose "to become argumentative and *create a disturbance* in an area where volatility is not acceptable."  Defendants' Motion for Summary Judgment, p. 5 (emphasis added). In support, they cite the disciplinary hearing report.  See Ex. 8, Special Report.  However, the disciplinary hearing report reflects only that Defendant Beasley stated that Plaintiff "became argumentative." There is no reference to a disturbance.  Id.  Furthermore, that same disciplinary

17

conviction was later reversed for "lack of evidence." Ex. 13, Special Report. Accordingly, Plaintiff has made a sufficient showing to withstand Defendants' motion for summary judgment on Plaintiff's First Amendment Free Exercise claim.[13]

### b. Lack of Personal Participation of Defendant Dishman

Defendant Dishman moves for summary judgment on grounds that his participation in Plaintiff's disciplinary misconduct action is not sufficient to establish a constitutional violation for several reasons. First, he notes that his participation was limited to his decision upon review of Plaintiff's disciplinary conviction, which is essentially a due process claim. He contends that the Due Process Clause does not protect prisoners from every adverse change in their confinement, and if a disciplinary action falls within the expected parameters of the sentence and does not otherwise violate the Constitution, there is no due process violation. Defendants' Brief in Support of Summary Judgment, p. 6. Next, Defendant Dishman claims that Plaintiff's allegations that he affirmed his misconduct even though he was aware of the request to staff approving his religious diet were not arbitrary or capricious in the constitutional sense. Id. at 6-7. Defendant Dishman further contends that his participation in appellate review of the misconduct cannot support a claim under the Due Process Clause because the right to procedural due process does not include administrative review of prison disciplinary hearings. Id. at 7-8. Defendant Dishman also points out that his actions could not have lengthened Plaintiff's sentence as all of his earned credits were restored before they could have any impact on his sentence, and moreover, Plaintiff is serving a life sentence and

---

[13]As noted previously, Defendants have failed to move for summary judgment on Plaintiff's claim of retaliation and his claim under RLUIPA, and thus those claims remain.

cannot show that his sentence was directly affected by the misconduct proceedings. <u>Id.</u> at 8,9. Finally, Defendant Dishman contends that Plaintiff cannot claim that as a result of the misconduct charge, his ability to earn credits was diminished, because prison officials have the discretion to assign and reassign inmates to various classification levels based upon a variety of factors. <u>Id.</u> at 9.

Plaintiff responds that Defendant Dishman had prior knowledge of "events" and his approved religious diet and "could have put a stop to the punishment and have all losses returned as if I loss nothing." Plaintiff's Response to Defendants' Motion for Summary Judgment, p. 5. Plaintiff claims a liberty interest in his approved religious diet, and that his due process rights were violated because Defendant Dishman did not respond to each issue raised by him in his appeal as provided in the applicable policy. <u>Id.</u> at 6. He claims that "any reasoning mind" could see that there was no evidence to Defendant Beasley's allegations, and that Defendant Dishman's actions deprived him of his religious diet while in segregation and lengthened his punishment for no penological reason. <u>Id.</u> at 6, 7. He claims that punishing conduct that is not proscribed by any rule is a violation of substantive due process which is not cured by a hearing meeting procedural due process requirements. <u>Id.</u> at 7.

The undersigned agrees with Defendant Dishman that his involvement in Plaintiff's claims was limited to his review of Plaintiff's misconduct offense conviction, as Plaintiff has come forward with no evidence showing any other involvement. Thus, Defendant Dishman is entitled to summary judgment as to Plaintiff's claims under the First Amendment and RLUIPA. <u>Larson v. Meek</u>, 04-1169, 240 Fed. Appx. 777, 780 (10th

Cir. June 14, 2007) ("Mr. Gillespie's denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations"); <u>Garcia v. Furlong</u>, No. 94-1477, 1996 WL 128130 (10th Cir. Mar. 22, 1996)(where supervisory defendant's only alleged actions were to administratively affirm the imposition of disciplinary punishment concerning inmate plaintiff, to sign an order affirming the order placing the inmate in administrative segregation, and to sign the memorandum advising the inmate that his visiting privileges were being suspended, district court's dismissal of §1983 action against supervisory defendant based on lack of personal participation was affirmed).

As for Plaintiff's claim for violation of his right to due process, due process is implicated only if he is subjected to a restraint that imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995) (quotation omitted). As the Court found in <u>Sandin</u>, "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." <u>Id.</u> at 485.  However, the district court must determine whether the degree of Plaintiff's restrictions as compared with other inmates is "atypical and significant," <u>Gaines v. Stenseng</u>, 292 F.3d 1222, 1226 (10th Cir. 2002).  In this case, Defendant Dishman has come forward with no evidence as to the nature of Plaintiff's restrictions vis a vis those of inmates in the general population.  In <u>Gaines</u>, the Tenth Circuit reversed the district court's decision to dismiss a plaintiff's case pursuant to  28 U.S.C. § 1915(e)(2) for failure to state a claim on which relief may be granted, holding that it was inappropriate to do so without the benefit of any evidence:

>In particular the district court must determine whether the seventy-five day duration of Gaines's confinement in disciplinary segregation is itself "atypical and significant." See Perkins, 165 F.3d at 809 (noting that the state must "fully address both the duration and degree of plaintiff's restrictions as compared with other inmates"); see also Colon v. Howard, 215 F.3d 227, 231-32 (2d Cir.2000) (emphasizing that "the duration of [disciplinary segregation] confinement is a distinct factor bearing on atypicality and must be carefully considered," and concluding that 305 days in such confinement is atypical and significant).

Gaines, 292 F.3d at 1226.[14]   The undersigned notes that the Court in Gaines commented that "[d]isciplinary segregation for some lesser period could fail as a matter of law to satisfy the 'atypical and significant' requirement in a case in the future." Id.   However, Defendant Dishman has not briefed this issue, making it impossible to "fully address" the issue.   Moreover, the undersigned has located one case in which the inmate was confined in disciplinary segregation only a few days longer than Plaintiff in this case, and the Tenth Circuit held there that although the "complaint does not provide any specifics concerning the conditions of his confinement in segregated housing or anything about how his situation was atypical ... he may be able to allege facts that demonstrate that the

---

[14]In Sandin, an inmate alleged that officials had failed to provide due process before placing him in segregation for 30 days. 515 U.S. at 475-76.  The United States Supreme Court rejected the claim, holding that the plaintiff did not have a protected liberty interest in remaining free from segregation. Id. at 486- 87.  The Court reasoned that while a state regulation can create a protected liberty interest, such an interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

The Sandin majority conceded that the plaintiff's segregation was punitive. Id. at 485.  However, the Court opined that it did not dramatically depart from the basic conditions of the sentence. See id. Instead, the conditions of the plaintiff's segregation mirrored the conditions imposed on inmates within administrative segregation and protective custody. See id. at 486.  As a result, the plaintiff's confinement in punitive segregation "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Id.  Therefore, the Court held that the plaintiff was not entitled to procedural due process. Id.  The Gaines Court distinguished Sandin because it was on appeal from the grant of a summary judgment motion, and the Court carefully examined the conditions of the prisoner's confinement. Gaines, 292 F.3d at 1225.

length and the conditions of his stay in segregated housing constituted an atypical and significant hardship." <u>Jackson v. Ward</u>,  No. 05-5004, 159 Fed.Appx. 39, 41 (10th Cir. Dec. 19, 2005).

It might not be necessary to address whether the confinement was atypical, were it not for the finding by the administrative review authority that Plaintiff did not receive due process in his disciplinary hearing. <u>See</u> Ex. 11, Special Report; <u>Jackson</u>, 159 Fed. Appx. at 41 ("The court's order, however, failed to discuss Jackson's allegation that the thirty-six days he spent in segregated housing for an infraction that was overturned on appeal violated the Fourteenth Amendment").   However, the administrative review authority in this case specifically found a lack of due process in the disciplinary hearing. It is this fact that also precludes summary judgment on behalf of Defendant Dishman for lack of personal participation on Plaintiff's procedural due process claim. This situation is distinguishable from that where an administrator's involvement in a *substantive* claim is limited to review of grievance materials,[15] as the procedural due process claim is based upon that very review.

Defendants argue that no liberty interest was implicated by the reduction of Plaintiff's classification level to level one because classification decisions are based upon subjective criteria, and Plaintiff would not have been entitled to any particular classification level absent his misconduct conviction. Defendants' Brief in Support of Motion for Summary Judgment, p. 10-11.  Although it is true that the reduction in classification level and concomitant loss of earned credits implicates a liberty interest

---

[15]As noted on page 19-20, <u>supra</u>, Defendant Dishman is entitled to summary judgment on Plaintiff's First Amendment and RLUIPA claims on this basis.

only if "the State's action will inevitably affect the duration of [the inmate's] sentence," Sandin 515 U.S. at 487, the Tenth Circuit has made it clear when a disciplinary conviction results in a mandatory reduction in classification level, "the fact that prison officials have discretion to change a prisoner's classification when considering other conduct is irrelevant." Wilson v. Jones, 430 F.3d 1113, 1122 (10th Cir. 2005). Defendants have failed to provide any evidence as to whether Plaintiff's classification level was reduced automatically or as part of a classification decision, but in any event, Plaintiff cannot show that the duration of his sentence has been affected because he has no liberty interest in any additional earned credits as an inmate serving a life sentence. As recently noted by the Tenth Circuit Court of Appeals:

> To begin, it is well-established that "the requirements of procedural due process apply only to the deprivation of those interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). It is also true that Oklahoma state law may create a liberty interest in earned good time credits. See Waldon v. Evans, 861 P.2d 311, 313 (Okla. Crim. App. 1993). Oklahoma law also mandates, however, that "no deductions shall be credited to any inmate serving a sentence of life imprisonment." See Okla. Stat. tit. 57, § 138(A). [Petitioner] is serving a life sentence. Therefore, despite the fact that [Petitioner] has earned good time credits, he is not entitled to use them for early release and accordingly enjoys no liberty interest in them.

Gamble v. Evans, No. 05-6283, 165 Fed.Appx. 698, 700 (10th Cir. Feb. 8, 2006) (habeas action) (parallel citations omitted), cert. denied, 127 S. Ct. 361 (2006). Accordingly no liberty interest was implicated by the reduction in earned credit level.

The undersigned also agrees that Plaintiff has come forward with no evidence showing a violation of his right to substantive due process. The prison grievance procedure does not confer substantive due process rights, Gaines v. Stenseng, 292 F.3d

23

1222, 1225 (10th Cir. 2002), and under the circumstances of this case, the alleged conduct of Defendant Dishman does not "shock the conscience." <u>See, e.g.</u>, <u>Perez v. Unified Government of Wyandotte County/Kansas City, Kansas</u>, 432 F.3d 1163, 1166 (10th Cir. 2005) ("Only government conduct that 'shocks the conscience' can give rise to a substantive due process claim.") (citation omitted), <u>cert .denied</u>, 126 S. Ct. 2971 (2006). Therefore, the facts at issue in this action fail to support any substantive due process claim.

In summary, it is recommended that Defendant Dishman be granted summary judgment on Plaintiff's claims under the First Amendment, RLUIPA, and for Plaintiff's claim that his right to substantive due process was violated.  It is further recommended that he be granted summary judgment to the extent Plaintiff claims that the acts of Defendant Dishman resulted in his lowered security classification for the period extending from the date of his misconduct charge to the time he was reinstated to classification level 3.  However, it is recommended that Defendant Dishman's motion for summary judgment on Plaintiff's procedural due process claim be denied.

### 3.  Exhaustion of Administrative Remedies

Defendants move for summary judgment on grounds that Plaintiff has failed to exhaust his administrative remedies regarding restoration of his earned credits and his complaints against Defendant Dishman.  Defendants' Motion, p. 11.  In doing so, they refer to Plaintiff's efforts to grieve Great Plains' failure to return him to Level III as of the date of his misconduct charge, and return any "gang pay" lost as a result of his decrease in classification level from that date through the date his classification level was adjusted

– February 14, 2006.  Defendants' Motion, Ex. 1.  They have submitted a copy of the three-step grievance policy applicable to Great Plains, and an affidavit from the Administrative Programs Officer at the Oklahoma Department of Corrections, declaring that Plaintiff filed only one administrative appeal from September 2005 through September 2007 for actions stemming from the misconduct conviction, and that this appeal was declared out of time.[16]  Defendants' Motion Ex. 1; Special Report, Ex. 15.

Plaintiff responds that he raised the same issues claimed to be unexhausted in the misconduct appeal, and again in his administrative remedies following dismissal of the misconduct. Plaintiff's Response, p. 9-10.  He claims that he pursued the grievance remedy following the dismissal of the misconduct charge at the instruction of his case manager, but that GPCF refused to answer his grievance.  Id.  He also claims that  he "put forth his best good faith effort to exhaustion of available administrative remedies" and that "material facts" preclude summary judgment.  Id. at 10.

In light of the rule that failure to exhaust is an affirmative defense, giving Defendants the burden of proof, the undersigned finds that they have failed to show an absence of material fact with regard to that defense.  First, as Plaintiff contends, the misconduct appeal did raise the same issues as those raised in this action.   In the misconduct appeal, Plaintiff alleged that the only documentary evidence offered at the hearing was the response to his May 2003 request to staff approving a religious diet; that the applicable policies and procedures provide that the religious coordinator is the one to approve special diets on religious grounds; that applicable policies and procedures

---

[16]Ms. Bartling refers to Grievance No. "06-935 attached"; however, the grievance attached is number 06-835.  The undersigned has assumed this is a typographical error.

provide that an inmate unable to eat one food item on religious grounds will be offered a double portion of another item; that there is no policy or procedure requiring all items on all trays; and that the misconduct was an "an attack against me on religious issues." Offender's Misconduct Appeal Form, Special Report, Ex. 9.

In his appeal from Defendant Dishman's finding that due process had been provided, which was affirmed by Richard Barger, Plaintiff stated that he "still raise[s] all the same issue[s] on the appeal form to the facility," and added that the notice of hearing and notice of charge were inadequate; that no evidence was ever provided; that the disciplinary hearing officer allowed anybody in or out of the room during the hearing and during his deliberation; that the hearing officer did not state the evidence relied upon for his finding of guilt; and that the education director, Richard Barger, rather than the facility head responded to his appeal.  See Offender's Misconduct Appeal Form Due Process Review, p. 2 (attached to Amended Complaint).  As relief, Plaintiff requested that the misconduct conviction be "dismissed [and that he be returned] back to my Level III, and give me the missed pay.  And let me have my religious rights."  Id.  Although Plaintiff did also pursue a grievance after his misconduct charge was dismissed, Defendants have failed to show that this is required under the applicable policy. Defendants have also failed to show an absence of material fact as to the timeliness of Plaintiff's grievance efforts following dismissal of the misconduct charge.  Plaintiff indicates in his grievance of March 29, 2006, that three requests to staff were submitted: February 15, 2006; February 23, 2006; and March 6, 2006.  Plaintiff's Response to Defendants' Motion to Dismiss, Ex. Q-1 [Doc. No. 44].  Defendant Dishman responded,

claiming that the grievance was out of time from the date of "incident," but does not refer to the date of response (or lack thereof) to any of the three requests to staff, which under the applicable grievance policy determines the timeliness of the grievance.  Plaintiff's Response to Defendants' Motion to Dismiss, Ex. Q-2 [Doc. No. 44]; Special Report, Ex.15 (OP-090124(V)(A)(1)).  Likewise, Director's Designee Morton refers to the grievance as being out of time by reference to the two earlier requests to staff – the ones dated February 15 and 23, 2006 – but Defendants do not provide copies of these in the Special Report, or even indicate whether Plaintiff received any response at all to them.[17]  It may be that Defendant Dishman was referring to the fact that the Request to Staff was out of time from the date of the incident, but if he was, he did not address Plaintiff's explanation that he waited to file the first Request to Staff at the direction of his case manager.  Plaintiff's Response to Defendants' Motion to Dismiss, Ex. Q-1, p. 2 [Doc. No. 44].  To summarize, Defendants have simply failed to carry their burden of showing a lack of dispute as to the facts surrounding Plaintiff's exhaustion efforts following dismissal of the misconduct  – even assuming that post-dismissal grievance efforts were required.  It is recommended that Defendants' motion for summary judgment on grounds that Plaintiff has failed to exhaust his administrative remedies be denied.

## B.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's motion for summary judgment is for the most part only a recitation of what he claims to be undisputed facts, and to the extent those have been adopted, they

---

[17]Defendants did provide copies of some of the documents Plaintiff provided but the Defendants provided them as attachments to their motion for summary judgment.

appear above.[18] Although Plaintiff has raised a dispute as to material facts precluding summary judgment for Defendants as noted above, those same disputes prevent the entry of summary judgment in his favor.

### C. MOTION FOR APPOINTMENT OF COUNSEL

In considering requests for the appointment of counsel under § 1915, the United States Court of Appeals for the Tenth Circuit has directed that the Court consider the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to present his claims. Rucks v. Boergermann, 57 F.3d 978, 979 (10th Cir.1995). Although Plaintiff's remaining claim is not overly complex, his status as a prisoner clearly impacts his ability to conduct any necessary discovery. The undersigned has already concluded that Plaintiff may indeed have a viable claim, and should the case proceed to trial, the services of an attorney on Plaintiff's behalf will clearly result in more efficient proceedings. Accordingly, the undersigned recommends that Plaintiff's motion for the appointment of counsel [Doc. No. 55] be granted.

### RECOMMENDATION

For the reasons set forth above, it is recommended that the motion for summary judgment of Defendant Beasley [Doc. No. 54] be denied. It is further recommended that the motion for summary judgment of Defendant Dishman [Doc. No. 54] be granted in part and denied in part, as more specifically stated above. It is further recommended that the motion for summary judgment and objection to incomplete special report of Plaintiff

---

[18]Plaintiff's objection to the Special Report is hereby overruled. To the extent the report was incomplete, it has been supplemented by exhibits to the dispositive motions, and nothing would be gained by requiring supplementation at this point.

28

[Doc. No. 35] be denied.  In light of this recommendation, it is further recommended that Plaintiff's motion for appointment of counsel [Doc. No. 55] be granted. The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by March 13, 2008, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 22nd day of February, 2008.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE