# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WAHIID M. ALAMIIN, a/k/a<br>JAMES SHOCKEY,<br><br>        Plaintiff,<br><br>vs.<br><br>JEWEL BEASLEY, et al.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)    Case No. CIV-06-871-F<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing through counsel, brings this action pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). United States District Judge Stephen P. Friot has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The only remaining Defendant, Cornell Companies, Inc. (CCI), has filed a motion to dismiss/motion for summary judgment.[1] Plaintiff has responded, and a reply has also been filed. Thus, the matter is at issue and ready for disposition. For the following reasons, it is recommended that the motion for summary judgment be granted.

## I . BACKGROUND

Plaintiff is a practicing Muslim who at all times relevant to this dispute was housed

---

[1] The undersigned notes that for all pleadings, motions, and briefs the print style, including footnotes, shall not be less than 13-point type. L.Civ.R.7.1(d). Defendant Cornell's brief is obviously not in compliance with this requirement. However, due to the age of this case, the brief will nonetheless be considered in its current format.

at the Great Plains Correctional Facility (Great Plains). Second Amended Complaint, ¶ 10. He claims that from September 2005 and throughout his incarceration at Great Plains he was denied a religious diet consistent with his sincerely held religious beliefs, in violation of RLUIPA. Id. at ¶ 7, 11, 17.[2] In the third count[3] of his second amended complaint, Plaintiff names CCI, the corporation that operates Great Plains, a private prison facility contracted to house Plaintiff and others under the custody of the Oklahoma Department of Corrections. Second Amended Complaint, ¶ 4-5, 17. Plaintiff had also made allegations against the Oklahoma Department of Corrections (ODOC) in his third count, but on December 13, 2010, ODOC filed a motion to dismiss on grounds that it is entitled to Eleventh Amendment immunity to Plaintiff's damages claim under RLUIPA. The undersigned recommended that the motion to dismiss be granted, and the Report and Recommendation was adopted by Judge Friot on March 25, 2011. [Doc. Nos. 148, 151].[4] After the recommendation was made, Plaintiff requested leave to amend his complaint yet again to include a claim for injunctive relief – in an attempt to avoid the Eleventh Amendment bar to damages, which was the only

---

[2]In a section of the Complaint titled "Facts Common to All Counts," Plaintiff has numbered paragraphs 10 and 11. Then, under "Count One" Plaintiff labels the first two paragraphs as paragraphs 10 and 11. The paragraph referenced in the body of this Report and Recommendation is to the first paragraph 11, contained in the section "Facts Common to All Counts."

[3]The first two counts of the Second Amended Complaint concerned Defendants Beasley and Dishman, who have now been dismissed from this action.

[4] Since that time, the United States Supreme Court has unequivocally held that "that States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver." Sossamon v. Texas, ___U.S.___, 131 S.Ct. 1651, 1663 (2011).

relief sought in the Second Amended Complaint. In Judge Friot's order adopting the undersigned's Report and Recommendation, he addressed the motion to amend, noting that this case has been pending well over four years and that there have been previous rounds of dispositive motions. [Doc. No. 151, p. 2-3]. He found the proposed amendment to be potentially prejudicial to ODOC, inevitably resulting in yet another round of dispositive motions, and noted that Plaintiff has another action pending involving the denial of a halal diet in which he *does* seek injunctive relief. Judge Friot found that under the circumstances, justice does not require another opportunity to amend the pleadings and he denied the motion to amend. Thus, CCI is the only remaining Defendant in this action. Plaintiff claims that the refusal to provide a halal diet was malicious, willful, and in reckless or gross disregard of his rights, and he requests punitive damages. Second Amended Complaint, ¶ 19. As further relief, Plaintiff seeks a declaration that these acts violated his rights under RLUIPA, compensatory damages for "humiliation, embarrassment, and emotional and mental distress," compensation for the loss of earned credits he could have earned when his classification level was decreased as the result of a misconduct offense related to his failure to accept pudding on his food tray on September 29, 2005, interest and costs, punitive damages, and "all other relief available under RLUIPA ...." Id. at ¶ 19(a)-(g).

## II. PROCEDURAL HISTORY

Plaintiff initiated this action on August 16, 2006, naming as Defendants Jewel Beasley and Kyle Dishman, respectively a captain and the warden's designee at Great Plains. [Doc. No. 1]. In that two-count complaint, Plaintiff first alleged that Defendant Beasley violated

his religious rights by forcing him to accept pudding on his food tray even though he had been granted permission by the chaplain not to eat pudding for religious reasons. He alleged that Defendant Dishman also violated his religious rights by affirming a misconduct he received as a result of his refusal to accept pudding on his tray. On December 29, 2006, Plaintiff filed his first amended complaint, adding a third count alleging that prison policy allowed him to refuse a food item that is prohibited by his religious beliefs; Beasley and Dishman were still the only Defendants named. [Doc. No. 26].

On March 16, 2007, Defendants Beasley and Dishman moved to dismiss the amended complaint on three grounds. [Doc. No. 31]. The undersigned recommended that Defendants' motion to dismiss be denied, and that Report and Recommendation was adopted by Judge Friot on August 30, 2007. [Doc. No. 49].

On October 5, 2007, Defendants Beasley and Dishman filed a motion for summary judgment. [Doc. No. 54]. On February 22, 2008, the undersigned recommended denying the summary judgment motion of Defendant Beasley, and granting in part and denying in part the summary judgment motion of Defendant Dishman. [Doc. No. 62]. The undersigned also recommended the appointment of counsel. That Report and Recommendation was adopted by Judge Friot on June 6, 2008. [Doc. No. 70].

Judge Friot recommitted the matter to the undersigned to arrange for the appointment of counsel, and counsel entered an appearance on behalf of Plaintiff on September 15, 2008. [Doc. Nos. 70, 71]. Three scheduling orders were entered by Judge Friot from December 1, 2008 to July 14, 2009. [Doc. Nos. 78, 89, 101]. On August 7, 2009, Defendants Beasley and

4

Dishman moved for a stay of the case on grounds that a similar case in which an Oklahoma prisoner alleged that he was forced to violate the tenets of the Muslim faith when he was denied a Halal diet was then on appeal in the Tenth Circuit. [Doc. No. 140]. The stay was granted, and the parties were directed to inform the Court when the decision in that case had been reached. [Doc. No. 106].

On April 16, 2010, the parties notified the Court that the Tenth Circuit had reached its decision in Abdulhaseeb v. Calbone, 600 F.3d 1301 (10th Cir. 2010), cert. denied 131 S.Ct. 469 (2010). A fourth scheduling order was entered on May 4, 2010. [Doc. No. 111]. Thereafter, Plaintiff moved the Court to allow him to again amend his complaint; that motion was granted and Plaintiff filed his Second Amended Complaint on August 6, 2010. [Doc. No. 120]. This complaint added two Defendants - Defendant ODOC and Defendant CCI – and as noted above it is the Second Amended Complaint that now governs the action. Plaintiff obtained service upon these additional Defendants on September 27, 2010. [Doc. Nos. 135, 136]. Defendant CCI filed its answer on November 29, 2010. [Doc. No. 139].

On September 29, 2010, Defendants Beasley and Dishman moved for summary judgment with regard to the Second Amended Complaint. [Doc. 129]. Judge Friot re-referred this action to the undersigned, and ordered that the scheduling order then in effect be stricken with the exception of the discovery deadline – which was set for November 15, 2010 (and so has now expired). Before a recommendation on the merits of Beasley and Dishman's motion for summary judgment was entered, a stipulation of dismissal with regard to those Defendants was filed. [Doc. No. 133]. Accordingly, it was recommended that the pending

motions for summary judgment by Defendants Beasley and Dishman be denied as moot. [Doc. No. 134]. Judge Friot adopted that Report and Recommendation on December 9, 2010. [Doc. No. 140]. As noted above, Defendant ODOC was dismissed from the case because the Court found it to be entitled to Eleventh Amendment immunity on Plaintiff's damages claim under RLUIPA. Judge Friot also denied Plaintiff's motion to amend his complaint to add a claim for injunctive relief. The only remaining Defendant, CCI has now moved for dismissal/summary judgment

## III. SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only where the pleadings and any supporting documentary materials "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. Calhoun v. Gaines, 982 F.2d 1470, 1472 (10th Cir. 1992); Manders v. Oklahoma, 875 F.2d 263, 264 (10th Cir. 1989). A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." Id.

To obtain summary judgment, the moving party need not affirmatively negate the nonmovant's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Rather, the moving party initially bears the burden only of "'showing' - that is, pointing out to the

6

district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has satisfied this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. Id. at 324. The nonmoving party "may not rest upon mere allegation" in his pleading to satisfy this requirement Anderson, 477 U.S. at 256. Rather, Fed. R. Civ. P. 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.

## IV. DISCUSSION

### A. CCI'S LIABILITY UNDER § 1983[5]

Defendant CCI contends that Plaintiff has not shown personal participation in his claim under § 1983, and that a general responsibility for supervisory operations of a prison is insufficient to establish the personal involvement required to support liability. Motion of CCI, 4. CCI argues that the fact that a private corporation contracts with the government does not in and of itself subject the private corporation to liability for a constitutional violation. Id. CCI argues that in order to hold it liable, Plaintiff must show that any deprivation of his constitutional rights was caused by a policy or practice of CCI. Id. In other words, CCI contends that its employment of someone who was responsible for a

---

[5] Plaintiff specifically states that his claim against CCI is under RLUIPA. Second Amended Complaint, ¶ 17-18. However, he brought claims against the other Defendants under both RLUIPA and § 1983. Second Amended Complaint, ¶ 6, 11, 14. CCI appears to have considered that Plaintiff is also bringing a § 1983 claim against it. Therefore, to the extent Plaintiff has intended to bring a claim under § 1983 against CCI, the undersigned has addressed it.

7

constitutional violation would not subject it to liability without a showing that the violation was due to its policy and practice.

Plaintiff maintains that because CCI employed former Defendants Dishman and Beasley, CCI is liable for any constitutional violations committed by Dishman and Beasley. Plaintiff's Response to CCI's Motion, 5. The undersigned finds Plaintiff's position to be incorrect.

The Tenth Circuit applies the same test applicable to municipalities when determining whether a private prison corporate actor has personally participated in the violation of a prisoner's constitutional rights:

> In Monell, the Supreme Court held that a municipality cannot be held liable under 42 U.S.C. § 1983 merely on account of the unauthorized acts of its agents. While it is quite clear that Monell itself applied to municipal governments and not private entities acting under color of state law, it is now well settled that Monell also extends to private defendants sued under § 1983. See e.g., Dubbs v. Head Start, Inc., 336 F.3d 1194, 1216 (10th Cir. 2003) (collecting circuit court cases). As such, a private actor such as [Corrections Corporation of America] [hereinafter CCA] "cannot be held liable solely because it employs a tortfeasor - or, in other words ... cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691, 98 S.Ct. 2018 (emphasis in original). Therefore, in order to hold CCA liable for the alleged tortious acts of its agents, Ms. Smedley must show that CCA directly caused the constitutional violation by instituting an "official municipal policy of some nature," id., that was the "direct cause" or "moving force" behind the constitutional violations. Pembaur v. City of Cincinnati, 475 U.S. 469, 480-85 (1986); City of Oklahoma City v. Tuttle, 471 U.S. 808, 820 (1985).

Smedley v. Corrections Corp. of America, No. 04-5113, 175 Fed.Appx. 943, 946 (10th Cir. Dec. 20, 2005) (parallel citations omitted) (citing Monell v. Dep't of Social Services of New York, 436 U.S. 658, 691 (1978)).

Plaintiff's § 1983 claim is based on his allegation that his constitutional rights were violated by Defendants Beasley and Dishman, and that CCI employed Beasley and Dishman. He has come forward with no evidence showing that a policy and practice of CCI was the direct cause or moving force behind any constitutional violation. Accordingly, to the extent Plaintiff is raising a § 1983 claim, CCI is entitled to summary judgment.

### B. CCI'S LIABILITY UNDER RLUIPA

Next, CCI argues that it is entitled to summary judgment on Plaintiff's RLUIPA claim because he has not shown that CCI substantially burdened his religious practice.[6] Motion of CCI, 8-9. CCI argues that injunctive relief is not available because Plaintiff is no longer incarcerated at Great Plains, and that "there is very little guidance" regarding the availability of damages. Motion of CCI, 7-8.

Plaintiff counters that CCI "is the immediate employer of Beasley and Dishman" who were acting in their official capacity, and that CCI cannot "avoid legal liability for employing persons who commit alleged constitutional violations, particularly where, as here, [CCI] specifically ratified the arguably unconsitutional conduct." Plaintiff's Response, 6. Plaintiff claims that CCI's failure to provide a Halal diet was a strict violation of RLUIPA and caused him to suffer damages. Second Amended Complaint, ¶ 18. He claims that "[f]orcing a

---

[6]The undersigned notes that CCI states that RLUIPA allows a person to bring a judicial proceeding for appropriate relief against either a government or an individual in his or her official capacity, but does not make any argument that it is or is not amenable to suit under RLUIPA. Motion of CCI, 6-7. Further, CCI makes no argument as to whether either the doctrine of respondeat superior or the Monell test should be used to determine a private corporation's liability under RLUIPA, assuming it is amenable to suit.

9

prisoner to decide between eating and exercising his religion constitutes a Hobson's choice," neither of which is constitutional. Plaintiff's Response, 6. He claims that an "out and out strict denial of a Halal diet could be deemed a substantial burden" on his religious rights, and that he has presented "a fact issue on whether the situation in which he was placed imposed a substantial burden" on his religious exercise. Id. at 7. In his response to CCI's motion for summary judgment, Plaintiff relies heavily on Abdulhaseeb v. Calbone, 600 F.3d 1301 (10th Cir. 2010). In Abdulhaseeb, the Tenth Circuit defined substantial burden as follows:

> We conclude that a religious exercise is substantially burdened under 42 U.S.C. § 2000cc-1(a) when a government (1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice-an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

Abdulhaseeb, 600 F.3d at 1315. Noting that the first two parts of the test need no further explanation, the Tenth Circuit turned to two United States Supreme Court decisions in order to further define "substantial pressure":

> In Thomas, the Supreme Court held that
>
>> [w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.

Similarly, in Sherbert, the Court stated,

> [h]ere not only is it apparent that appellant's declared ineligibility for benefits derives solely from the practice of her religion, but the pressure upon her to forgo that practice is unmistakable. The ruling forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand.

Abdulhaseeb, 600 F.3d at 1315 (quoting Thomas v. Review Board of Indiana Employment Security Division, 450 U.S. 707, 717-18 (1981) and Sherbert v. Verner, 374 U.S. 398, 404 (1963)). Based on the record in Abdulhaseeb, the Tenth Circuit found that there was a genuine issue of material fact as to whether the denial of a halal diet that contained halal meats substantially burdened the plaintiff's sincerely held religious beliefs: "It is a reasonable inference that ODOC's failure to provide a halal diet either prevents Mr. Abdulhaseeb's religious exercise, or, at the least, places substantial pressure on Mr. Abdulhaseeb not to engage in his religious exercise by presenting him with a Hobson's choice-either he eats a non-halal diet in violation of his sincerely held beliefs, or he does not eat." Abdulhaseeb, 600 F.3d at 1316-17. Mr. Abdulhaseeb presented facts which he alleged showed a genuine issue of material fact as to whether he was forced to choose between his religious practice and adequate nutrition. Id.

In doing so, the Tenth Circuit made two statements that are of particular relevance to the instant motion. First, the Court made clear that a claim under RLUIPA considers the religious practice of the *particular litigant* involved – not the religious practice of *all* of those in the same faith group. Id. at 1314. In other words, in this case RLUIPA must be applied

11

with regard to Plaintiff's beliefs, not to the beliefs of any Muslim practitioner. See id. Second, the Tenth Circuit affirmed summary judgment for the defendants on Mr. Abdulhaseeb's claim that he was forced to accept jello and pudding on his tray on one occasion, noting that not every single presentation of a meal an inmate considers impermissible constitutes a substantial burden on religious exercise. Id. at 1321 (citing Rapier v. Harris, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (unavailability of pork-free meals on three out of 810 occasions only a de minimis burden). The Tenth Circuit noted that it assumed that as the frequency of presenting unacceptable foods increases, the situation at some point might rise to the level of a substantial burden, but that evidence of only an isolated event accompanied by general, conclusory allegations that the practice continues is not sufficient to raise a fact question preventing summary judgment. Id. at 1321. In this case, the undersigned finds for two reasons that Plaintiff has failed to raise a genuine issue as to whether his religious exercise was substantially burdened.

First, Plaintiff has failed to comply with the rules regarding briefs in opposition to motions for summary judgment. Local Civil Rule 56.1(c) states:

> (c) The brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist. Each fact in dispute shall be numbered, *shall refer with particularity to those portions of the record upon which the opposing party relies* and, if applicable, shall state the number of the movant's facts that is disputed. All material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party.

(emphasis added). Here, Plaintiff's "statement of facts creating a controversy" does not refer

12

with particularity to any portion of the record. Indeed, "Plaintiff's Fact No. 1" incorporates by reference four documents previously filed in this case. Plaintiff's Response, 1-2 (incorporating Doc. Nos. 62, 44, 61, and 148). Then Plaintiff begins a list of ten "contested facts" such as "[s]ufficient favorable light evidence exists on the question of whether Plaintiff's approved religious diet was deliberately denied by an individual employed by [CCI] (Jewel Beasley) during the relevant time frame. (Dkt. No. 62)." Some "facts" listed do not even identify *which* of the four documents he has incorporated by reference support, citing only "Plaintiff's Fact No. 1." Plaintiff's list of "contested facts" contains not one particularized citation to the record. See Plaintiff's Response, 2-3. Apparently, Plaintiff leaves it to the Court to search these documents for the passages that may support his claim that a certain material fact is contested; however, it is not the office of the Court to search out support for a litigant's legal or factual propositions.

Only recently, the Tenth Circuit Court of Appeals addressed this issue in the context of deciding whether to grant a certificate of appeal to a *pro se* litigant in a habeas appeal:[7]

> Under the rules of this circuit, "[i]ncorporating by reference portions of lower court or agency briefs or pleadings is disapproved." 10th Cir. R. 28.4. In the context of our consideration of Mr. Argota's COA application, where his incorporation is so sweeping, we perceive no good cause for treating this general disapproval as anything less than an outright prohibition.
>
> This is not an exercise of bureaucratic hypertechnicality. Mr. Argota carries the burden of demonstrating that reasonable jurists could at least debate the correctness of the district court's resolution [of] his claims. Through such

---

[7]It should be reiterated at this point that Plaintiff in the present case is represented by counsel.

> wholesale incorporation of his arguments before the district court, he does not even begin to carry this burden. In particular, he asks us to examine the details of eight claims without even identifying for our consideration any alleged errors in the district court's fact-finding or legal analysis. This is unacceptable. We decline to fashion arguments for Mr. Argota. See DiCesare v. Stuart, 12 F.3d 973, 979 (10th Cir. 1993) ( "[W]hile we hold pro se litigants to a less stringent standard, it is not the proper function of the district court to assume the role of advocate for the pro se litigant."); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (same); see also Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]he court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record.").

Argota v. Miller, No. 10–6251, 2011 WL 2133690 at * 2 (10th Cir. May 31, 2011) (some citations omitted). Similarly, the undersigned declines to search the four cited documents to determine whether there is support for Plaintiff's contention that certain material facts are disputed.

Alternatively, the undersigned's finding of undisputed facts in the Report and Recommendation of February 22, 2008 [Doc. No. 62] (which is one of the documents incorporated by reference in Plaintiff's response to CCI's motion for summary judgment) indicates that Plaintiff was approved for a non-pork religious diet, including at times a specific directive that this also allowed him to forgo all jello and pudding-like products. Alamiin v. Beasley, No. CIV-06-871-F, Report and Recommendation, p. 6, 8 (W.D. Okla. Feb. 22, 2008) (Argo, M.J.) adopted, 2008 WL 2371869 (W.D. Okla. June 6, 2008) (Friot, D.J.). It was also found to be undisputed that Plaintiff complained that he was forced to accept pudding on his tray three times over a three year period while housed at Great Plains: October 1, 2004, September 29, 2005, and September 16, 2006. Id. at 6-7, 10. The

14

September 2005 incident resulted in a misconduct offense being filed against Plaintiff regarding his reaction to being forced to take the tray, and although the misconduct was eventually dismissed, Plaintiff did spend 30 days in segregation as a direct result of that incident. Id. at 6-7, 8-9. This period happened to fall during the Islamic holy season of Ramadan, and Plaintiff claimed that while in segregation his breakfast tray was brought too late in the day for him to eat it and also observe Ramadan, resulting in his only eating one sandwich per day during this period. Id. at 11.

As the moving party, CCI initially bears the burden only of "'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Here, CCI has pointed out that Plaintiff has not shown that he was forced to make a choice between eating a non-halal meal or not eating at all. Motion of CCI, 8-10. It further notes that Plaintiff has failed to show that his religious beliefs were substantially burdened, only that his approved religious diet was not provided on isolated occasions. Id. Thus, CCI has satisfied its burden of showing the absence of evidence to show that Plaintiff's sincere religious beliefs were substantially burdened. Thus, it is Plaintiff's burden to show that there is a genuine issue of material fact. Celotex, 477 U.S. at 324.

The undersigned finds that Plaintiff has failed in this burden. While he was denied his requested diet on three occasions over three years, and was not able to receive his breakfast tray early enough in the day during one thirty-day stay in segregation in 2005, Plaintiff *was* approved for a religious diet at Great Plains, and unlike the plaintiff in Abdulhaseeb, has not

shown that he was continually forced to choose between following his beliefs or eating the religious diet for which he was approved. Abdulhaseeb, 600 F.3d at 1316-17.[8] The occasions on which the diet was not followed constitute at most a de minimis burden. In fact, Plaintiff himself frames the issue as [s]ufficient favorable light evidence exists on the question of whether an *isolated* incident of depriving Plaintiff a religious diet was a violation of the Free Exercise Clause." Plaintiff's Response, 2-3 (emphasis added). It is therefore recommended that summary judgment be granted in favor of CCI on Plaintiff's claim under RLUIPA.

## RECOMMENDATION

For the reasons and to the extent set forth above, it is recommended that the Motion for Summary Judgment of Defendant Cornell Companies, Inc. [Doc. No. 153], be **GRANTED**. The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by July 5, 2011, in accordance with 28 U.S.C. § 636 and Fed.R.Civ.P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal questions contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned

---

[8]Mr. Abdulhaseeb's sincerely held religious belief required him to eat a halal diet that included halal meats, rendering both the non-pork and vegetarian common fare diets contrary to his religious practice. 600 F.3d at 1316-17. The Plaintiff in this case has not alleged that the approved religious diets themselves, when followed, were in contravention of his sincerely held belief. As the Tenth Circuit stated in Abdulhaseeb, the Court's focus in a RLUIPA case must be on the particular litigant, and not generally upon what any adherent to Islam may believe. Id. at 1314.

16

Magistrate Judge in the captioned matter.

**ENTERED this 13th day of June, 2011.**

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE